UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BELVA COMINS,
          Plaintiff,

v.                       5:05-CV-556
                      (FJS/GHL)
MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]
          Defendant.

APPEARANCES:             OF COUNSEL:

OLINSKY & SHURTLIFF          JAYA SHURTLIFF, ESQ.
*Counsel for Plaintiff*
300 S. State Street, 5th Floor
Syracuse, New York 13202

HON. GLENN T. SUDDABY         WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant United States Attorney
 Northern District of New York
*Counsel for Defendant*
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[2]

**I. BACKGROUND**

  **A. Procedural History**

Plaintiff filed applications for disability insurance benefits ("DIB") and Supplemental

Security Income ("SSI") on October 10, 2003. (Administrative Transcript ("T") at 41-42, 320-26,

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit for Jo Anne B. Barnhart.

[2] This matter was referred to me for report and recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

Dkt. No. 6)  The applications were denied initially.  (T. at 26-32, 327-30.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on July 1, 2004.  (T. at 336-60.)  On October 25, 2004, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 12-20.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 17, 2005.  (T. at 4-6.)  Plaintiff commenced this action on May 9, 2005.  (Dkt. No. 1.)

### B. The Contentions

Plaintiff makes the following claims:

(1) The Commissioner erred in failing to fully develop the record.  (Dkt. No. 7 at 7-12.)

(2) The Commissioner erred by improperly presenting the hypothetical to the vocational expert.  (Dkt. No. 7 at 12-13.)

(3) The Commissioner erred in finding that the Plaintiff's subjective complaints were "only fair at best."  (Dkt. No. 7 at 13-14.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  Dkt. No. 9.

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520 (2005). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step

> requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

    **B.**    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.     THE PLAINTIFF**

Plaintiff was fifty-one years old at the time the ALJ rendered his decision.  (T. at 41.) She is a high school graduate and previously worked as a bus monitor.  (T. at 72, 77, 84, 110.) Plaintiff alleges disability due to severe depression, anxiety, panic disorder with agoraphobia, and shoulder and back impairments.  (Dkt. No. 7 at 1.)

**IV.     THE ALJ'S DECISION**

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset date; (2) Plaintiff had severe "chronic back/shoulder/knee pain, shortness of

breath, and depressive and anxiety disorders," but they did not meet or equal a listed impairment; (3) Plaintiff's allegations of disabling symptoms were "only fair at best"; (4) Plaintiff had the residual functional capacity ("RFC") to perform the requirements of light work in that she should lift no more than twenty pounds occasionally and ten pounds frequently, stoop, kneel, crouch, crawl, or climb no more than occasionally, refrain from working in an environment where there would be dust and fumes, and perform simple routine work in a structured environment without significant public contact; (5) Plaintiff could not perform her past relevant work as a bus monitor; and (6) using the testimony of a vocational expert, there were a significant number of jobs in the national economy that Plaintiff could have performed, thus she was not disabled. (T. at 19-20.)

V.      DISCUSSION

   A.      **Whether the Commissioner Erred by Failing to Fully Develop the Record in Light of Plaintiff's *Pro Se* Status**

Plaintiff argues that the ALJ erred by failing to contact her treating psychiatrist, Dr. Vilas Patil, to obtain an opinion regarding Plaintiff's mental abilities. (Dkt. No. 7 at 7-12.) Defendant contends that the ALJ's decision was based upon a fully developed record. (Dkt. No. 9 at 12-13.)

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512(d), 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . ."). This affirmative duty is heightened in cases involving *pro se* claimants as the

"ALJ has a duty to adequately protect a *pro se* claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered.'" *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (quoting *Hankerson v. Harris*, 636 F.2d at 895). In this regard, the ALJ must make "every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (quoting 20 C.F.R. § 404.1512(d)); *see also Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2004). "Accordingly, an ALJ may not rely, as factfinders in adversarial proceedings customarily do, on the *absence* of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him." *Sanchez v. Barnhart*, 329 F. Supp. 2d at 450 (emphasis in original) (internal quotation marks and citations omitted). In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination. 20 C.F.R. §§ 404.1512(e), 416.912(e).

In this case, the ALJ found, based on the medical records pertinent to her psychological impairments, that Plaintiff could perform simple routine work in a structured environment without significant public contact. (T. at 20.) However, the ALJ stated that Plaintiff did not have severe limits in attention, concentration, and task persistence. (T. at 19.) In reaching this conclusion, the ALJ relied upon opinions from treating physician Dr. Miriam V. Ragab, state agency consultative examiner Dr. Kristen Barry, disability analyst Y. Sienko, clinical social worker John Anderson, and state agency consultative examiners Drs. Dennis M. Noia and P.A. Spearman.

On October 8, 2002, Dr. Ragab completed a state agency form and noted that Plaintiff sought treatment every two to three months and that she had been diagnosed with generalized anxiety disorder and paranoia. (T. at 189.) Dr. Ragab opined that Plaintiff's mood and affect was stable and appropriate and continued to improve daily. (T. at 190, 192.) Then on October 14, 2002, Dr. Barry opined that Plaintiff's speech was fluent and clear, her thought processes were coherent and goal directed with no evidence of hallucinations or delusions, her affect was mildly anxious, she appeared somewhat helpless and dysphoric, and her mood appeared apathetic, easily agitated, and anxious. (T. at 184.) Dr. Barry also found that Plaintiff was oriented to person, place, and time, her sensorium was clear, attention and concentration were fairly intact, recent and remote memory skills were grossly intact, intellectual functioning was in the low-average range, insight was somewhat limited, and judgment was fair to poor. (T. at 184-85.) She diagnosed Plaintiff with panic disorder with agoraphobia, alcohol dependence in remission, and personality disorder, and concluded that Plaintiff was able to follow and understand simple directions and instructions and maintain attention and concentration in a structured environment, although she appeared to have difficulty handling stresses and relating adequately to others. (T. at 185-86.)

On November 14, 2002, a state agency disability analyst, Y. Sienko, completed a mental RFC assessment.[3] (T. at 204-06.) The analyst examined twenty categories of mental functioning and of those twenty, it was found that Plaintiff had moderate limitations in only four categories: 1) the ability to understand and remember detailed instructions; 2) the ability to maintain attention and concentration for extended periods; 3) the ability to complete a normal workday

---

[3] Dr. Ed Kamin approved the findings made by the analyst on November 26, 2002. (T. at 206.)

and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and 4) the ability to interact appropriately with the general public. (T. at 204-05.) The analyst concluded that Plaintiff was not significantly limited in any other categories. (*Id.*) The same day, disability analyst Y. Sienko also completed a psychiatric review technique form.[4] (T. at 208-20.) The analyst found that Plaintiff had medically determinable impairments that did not fit the diagnostic criteria, including panic disorder with agoraphobia, personality disorder, and alcohol dependence. (T. at 213, 215-16.) The analyst opined that Plaintiff had mild difficulties in maintaining social functioning, concentration, persistence, or pace, and moderate restrictions on activities of daily living. (T. at 218.) It was further noted that there was insufficient evidence to determine if Plaintiff had repeated episodes of deterioration. (*Id.*)[5]

Subsequently, on October 20, 2003, John Anderson, a clinical social worker of the Oswego Hospital Behavioral Services Division, assessed Plaintiff's mental status.[6] (T. at 194-96.) He reported that Plaintiff was oriented, immediate and recent memory was intact though remote memory was compromised, language abilities were intact, her affect was tearful, she denied having auditory or visual hallucinations, her thought process appeared significantly concrete, and her judgment and insight appeared somewhat compromised. (T. at 194-95.) Anderson diagnosed Plaintiff, in part, with adjustment disorder with anxiety and depressed mood

---

[4] Dr. Ed Kamin also approved the findings made by Sienko on the psychiatric review technique form. (T. at 208.)

[5] The analyst also found that the evidence did not establish the presence of the "C" criteria. (T. at 218.)

[6] Plaintiff was admitted to the Oswego Hospital Behavioral Services Division on October 1, 2003 and was discharged on October 31, 2003. (T. at 194-96.)

9

and depressive disorder.[7] (T. at 195.)

On November 21, 2003, Dr. Ragab completed another state agency form in which it was noted that Plaintiff was being treated weekly. (T. 260-66.) Dr. Ragab diagnosed Plaintiff with severe anxiety and depression and stated that with medications and counseling, she was stable. (T. at 260-61.) Dr. Ragab found that Plaintiff's attitude was more positive as the days went by, her speech was clear, thought content was borderline, mood was depressed, affect was appropriate, attention and concentration, orientation, memory, information, and ability to perform calculations were "all o.k.," and insight and judgment were occasionally in question. (T. at 262-63.) Dr. Ragab also opined that Plaintiff could tend to her activities of daily living, she could not be around a lot of people in a work setting, and she could handle payment benefits. (T. at 263-64.) Dr. Ragab concluded by finding that Plaintiff had no limitations in understanding and memory, sustained concentration and persistence, and adaptation, although she was limited in her ability to socially interact with others. (T. at 264-65.)

On December 1, 2003, Dr. Noia reported that Plaintiff's speech was fluent, her thought processes were coherent and goal directed with no evidence of hallucinations or delusions, her mood was mildly anxious, and her affect was congruent with her thoughts and speech. (T. at 269.) He opined that Plaintiff was oriented, her sensorium was clear, attention and concentration were intact, recent and remote memory skills were mildly to moderately impaired, intellectual functioning was in the low-average range, insight was fair to good, and judgment was good. (*Id.*)

---

[7] Anderson also stated that Plaintiff had a GAF of 60. (T. at 195.) The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR"). A GAF score between 51 and 60 indicates the existence of moderate mental health symptoms or moderate difficulties in social, occupational or school functioning. DSM-IV-TR 34.

Dr. Noia diagnosed Plaintiff with anxiety disorder and panic disorder with agoraphobia and concluded that

> [v]ocationally, the claimant appears to be capable of following, understanding, and remembering simple instructions and directions. She appears to be capable of performing simple and some complex tasks with supervision and independently. She may have difficulty maintaining attention and concentration for tasks and regularly attending to a routine and maintaining a schedule because of anxiety. She appears to be capable of making appropriate decisions. She appears to be capable of learning some new tasks. She appears to be able to relate to and interact appropriately with others. She is having difficulty dealing with stress.

(T. at 270.)

Thereafter, on December 19, 2003, Dr. Spearman completed a psychiatric review technique form. (T. at 272-83.) Dr. Spearman opined that Plaintiff had medically determinable impairments that did not fit the diagnostic criteria, including depression, anxiety disorder, panic disorder with agoraphobia, and adjustment disorder with anxiety and depressed mood. (T. at 275, 277.) Dr. Spearman found that Plaintiff had mild difficulties in maintaining social functioning and moderate restrictions on activities of daily living as well as difficulties in maintaining concentration, persistence, or pace. (T. at 282.) It was further indicated that Plaintiff had no repeated episodes of deterioration. (*Id.*)[8] The same day, Dr. Spearman completed a mental RFC assessment. (T. at 286-88.) He examined twenty categories of mental functioning and of those twenty, he found that Plaintiff had moderate limitations in only four categories: 1) the ability to understand and remember detailed instructions; 2) the ability to

---

[8] Dr. Spearman also stated that the evidence did not establish the presence of the "C" criteria. (T. at 283.)

11

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 3) the ability to respond appropriately to changes in the work setting; and 4) the ability to set realistic goals or make plans independently of others. (*Id.*) Dr. Spearman concluded that Plaintiff was not significantly limited in any other categories. (*Id.*)

Based on the plethora of medical opinions concerning Plaintiff's mental impairments, it is clear that there are no gaps in the record. As stated previously, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination. This is not the case here. There is enough evidence for the ALJ to adequately determine disability in regards to Plaintiff's mental conditions, especially in light of the fact that the record contains two assessments from a treating source, Dr. Ragab. Moreover, the record indicates that Dr. Vilas Patil, from whom Plaintiff claims that the ALJ should have obtained a medical source statement, only treated her on one occasion, with her primary treatment coming from clinical social worker Jeffery Quinlan with the Oswego Hospital Behavior Services Division. (*See* T. at 296-310.)[9] There was no need for the ALJ to contact Dr. Patil for an assessment to fill in any alleged gaps since the relevant facts were sufficiently developed. As such, the ALJ did not fail in his duty to fully develop the record and it is recommended that the ALJ's decision be affirmed on

---

[9]   In the assessment on March 12, 2004, Dr. Patil opined that Plaintiff's mood was neutral, affect was appropriate, there was no evidence of delusions or paranoid ideations, she was alert, oriented to time, place, and person, and her use of language and fund of knowledge appeared to be within the low-average range of intellectual functioning. (T. at 303.) Dr. Patil diagnosed her with adjustment disorder with depressed mood, panic disorder without agoraphobia, and traits of dependent personality disorder. (*Id.*) Furthermore, Dr. Patil stated that Plaintiff's GAF was 65. (*Id.*) A GAF score between 61 and 70 indicates only mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. DSM-IV-TR 34.

12

this ground.

### B. Whether the ALJ's Hypothetical Question Posed to the Vocational Expert and the ALJ's Decision to Reject Part of the Vocational Expert's Testimony Were Supported by Substantial Evidence

Plaintiff argues that even though the vocational expert ("VE") testified that jobs existed in the national and regional economy that Plaintiff could perform, such testimony was based on an improper hypothetical question as it failed to accurately reflect her mental limitations since they were more severe than described by the ALJ. (Dkt. No. 7 at 12-13.) Moreover, Plaintiff contends that the ALJ should have relied upon the VE's testimony that no jobs existed in the national economy that she could perform given her severe limitations in maintaining attention, concentration, and task persistence. (Dkt. No. 7 at 11-12.) Defendant states that the hypothetical question posed and the ALJ's decision to discount the VE's testimony regarding the severe limitations in maintaining attention, concentration, and task persistence were supported by substantial evidence. (Dkt. No. 9 at 10-13).

When "a claimant's nonexertional impairments significantly diminish[10] (his or) her ability to work, the Commissioner should be required to present the testimony of a vocational expert or other evidence concerning the existence of jobs in the national economy for an individual with claimant's limitations." *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229-230 (N.D.N.Y. 1998). The ALJ should elicit testimony from the VE by posing hypothetical questions. The questions must "reflect the full extent of the claimant's capabilities and impairments." *Sanchez v. Barnhart,* 329 F. Supp. 2d 445, 449 (S.D.N.Y. 2004); *see also Juleszo v. Barnhart*, 232 F. Supp. 2d 44, 57

---

[10]   A claimant's work capacity is "significantly diminished" if there is an additional loss of work capacity that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

(W.D.N.Y. 2002) (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir. 1992) for the proposition that "the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments" ) (further citation omitted)).  A hypothetical question that "fails to reflect all of a claimant's impairments that are supported by the record ...cannot be considered substantial evidence." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

In this case, the ALJ posed a hypothetical that included Plaintiff's physical and mental limitations.  (T. at 354.)  Specifically in regards to Plaintiff's mental condition, the ALJ told the VE to assume that an individual would be limited to simple routine work in a structured environment without significant public contact.  (*Id.*)  The VE testified that with those limitations, jobs that were available in the national and regional economy would be a laundry folder, light assembly worker, and clerical worker.  (T. at 355-56.)  The ALJ then presented an additional limitation to the hypothetical in that a person would have severe limitations in the ability to maintain attention, concentration, and task persistence on the frequency of two times a week for one or two hours.  (T. at 356.)  The VE testified that based on that revised hypothetical, an individual would not be able to retain competitive employment.  (*Id.*)

In rendering his decision, the ALJ stated that based upon Plaintiff's age, educational background, work experience, and RFC, taken in conjunction with the vocational expert's testimony and the Medical-Vocational Guidelines, she was capable of performing work that exists in significant numbers in the national economy.  (T. at 19.)  In so doing, the ALJ rejected the hypothetical regarding a severe limitation in attention, concentration, and task persistence on the ground that the record did not support that Plaintiff was so limited.  (*Id.*)  The ALJ's hypothetical posed to the VE was proper and took into account the diagnoses of Plaintiff's

14

mental conditions as well as her limitations. His decision to disregard the VE's conclusions about the non-availability of jobs with a severe limitation in attention, concentration, and task persistence was also proper.

The disability analyst and Dr. Kamin stated that Plaintiff had only mild difficulties in maintaining social functioning, concentration, persistence, or pace and that she was not significantly limited in her ability to understand, remember, and carry out short and simple instructions. (T. at 204, 218.) In fact, in the area of sustained concentration and persistence, they opined that Plaintiff was moderately limited in only two out of eight categories. (T. at 204-05.) Dr. Spearman opined that Plaintiff had only mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace. (T. at 282.) He also stated that she was not significantly limited in her ability to understand, remember, and carry out short and simple instructions and, in the area of sustained concentration and persistence, he found she was moderately limited in only one out of eight categories. (T. at 286-87.) Dr. Barry opined that Plaintiff was able to follow and understand simple directions and instructions and maintain attention and concentration in a structured environment. (T. at 185-86.) Dr. Ragab, Plaintiff's treating physician, concluded that Plaintiff's attention and concentration, orientation, memory, information, and ability to perform calculations were "all o.k." and that she had no limitations in understanding and memory, sustained concentration and persistence, and adaptation. (T. at 262-65.) Dr. Noia further stated that Plaintiff's attention and concentration were intact, she was capable of following, understanding, and remembering simple instructions and directions, performing simple and some complex tasks with supervision and independently, making appropriate decisions, and learning some new tasks, although she could have some difficulty

maintaining attention and concentration for tasks and regularly attending to a routine and maintaining a schedule because of anxiety and dealing with stress. (T. at 269-70.)

In addition to the limitations regarding Plaintiff's understanding and memory and sustained concentration and persistence, Plaintiff also had issues concerning interaction with the public. The disability analyst and Dr. Kamin noted that Plaintiff had a moderate limitation in dealing with the public. (T. at 205.) Dr. Barry stated that Plaintiff appeared to have difficulty handling stresses and relating adequately to others and Dr. Ragab reported that Plaintiff was limited in her ability to socially interact with others. (T. at 185, 264.) However, Dr. Noia stated that Plaintiff appeared to be able to relate to and interact appropriately with others. (T. at 270.)

Based on all of these findings, there is substantial evidence to support the ALJ's hypothetical that Plaintiff was limited to simple routine work in a structured environment without significant public contact. The ALJ took into account the medical evidence and presented a proper hypothetical. There is no support for Plaintiff's assertions that her limitations were far more severe and deserved additional restrictions. Moreover, the findings discussed provide substantial evidence to establish that Plaintiff did not have a severe limitation in the area of attention, concentration, and task persistence. Accordingly, it is recommend that the ALJ's decision in this regard be affirmed.

    **C.**    **Whether the Commissioner Erred in Finding That the Plaintiff's Subjective Complaints Were "Only Fair at Best"**

Plaintiff finally contends that the ALJ failed to properly assess her credibility because he did not specify whether her impairments could reasonably be expected to produce her pain and other symptoms, nor did he address all the factors set forth in 20 C.F.R. §§ 404.1529(c)(3),

16

416.929(c)(3). (Dkt. No. 7 at 13-14.) Defendant states that the ALJ's determination was proper. (Dkt. No. 9 at 10-12).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. §§ 404.1529, 416.929 (2005); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), 416.929(a) (2005). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c) (2005).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness,

and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2005). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

In his decision, the ALJ stated that Plaintiff's subjective complaints and allegedly related functional limitations were "only fair at best" and that while he accepted that Plaintiff had limitations resulting from her impairments, he did not find they were of disabling severity. (T. at 17.) This statement clearly shows that he found Plaintiff's impairments could reasonably be expected to produce pain or other symptoms. Since the ALJ found that Plaintiff's allegations of disabling symptoms and limitations were "only fair at best" (T. at 17), it was incumbent upon the ALJ to then assess the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), which he did. The ALJ reviewed and discussed the medications Plaintiff took, the treatment she received, her symptoms, daily activities, and measures taken to relieve the symptoms. (T. at 16-17.) Thus, the ALJ's findings are entitled to deference and the Court recommends that his decision be affirmed on this ground.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 20, 2008
       Syracuse, New York

George H. Lowe
United States Magistrate Judge